**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 23 2018

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

**UNITED STATES,**

      **Petitioner,**

v.

      Civil Action No. 4:18mc 3-BSM

**L'OREAL USA d/b/a/ L'OREAL
MAYBELLINE  CO.**

      **Respondent.**

## MEMORANDUM OF LAW IN SUPPORT OF PETITION TO ENFORCE ADMINISTRATIVE SUBPOENA *DUCES TECUM* ISSUED BY THE UNITED STATES DEPARTMENT OF LABOR - VETERANS' EMPLOYMENT AND TRAINING SERVICE ADMINISTRATION

### I. JURISDICTION

This Petition is brought to compel the Respondent to comply with an administrative subpoena *duces tecum* (hereinafter "the subpoena"), issued by the Regional Administrator, Dallas Region, of the Veterans' Employment and Training Service (hereinafter "VETS"), of the United States Department of Labor. The subpoena was sent to Respondent's registered agent on April 18, 2017, in an investigation conducted pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994 (hereinafter "USERRA" or "the Act"), 38 USCA § 4301, *et al.*  This Court has subject matter jurisdiction over this Petition pursuant, 38 U.S.C. § 4326(c).  Respondent's facility under investigation in this case is located at 1150 Maybelline Road, North Little Rock, Arkansas, within the jurisdiction of this Court.   Venue lies in the United States District

Court for the Eastern District of Arkansas pursuant to 38 U.S.C. § 4326, as Respondent

has conducted and continues to conduct business in this judicial district.

## II. FACTS

*Pre-Subpoena Communications*

      1.      VETS's Dallas Area Office initiated an investigation based upon a

complaint it received from Complainant Thomas R. Dashiell ("Complainant") on October

24, 2016. Declaration of VETS Investigator John F. Donovan ("JD Decl."), Exhibit 1 at ¶

3. Complainant, a Cake Press Operator at Respondent's North Little Rock facility

("L'Oreal Maybelline") alleged that he did not receive a pay increase that other

employees in the same position did during a departmental restructuring because he had

been called to active duty with the Army National Guard in November 2007. *Id.* As a

result of this complaint, VETS began an investigation under USERRA to determine

whether Complainant had been discriminated against for exercising rights protected under

the Act. *Id.*

      2.      VETS first contacted Respondent with a letter on October 27, 2016, in

which it explained Complainant's claim and requested a response in the form of a

position statement and supporting documentation by November 10, 2016. *Id.* at ¶ 4.

      3.      Despite numerous intervening communications via telephone and email,

VETS did not receive any response until November 29, 2016, in which L'Oreal

Maybelline's Human Resources Director, Jeff Bolden, informed VETS that "internal

counsel" would be providing a response. *Id.* at ¶ 5.

4.     On December 6, 2016, having received no further communication from Respondent, VETS sent a letter to Mr. Bolden informing him that VETS would use its subpoena power to acquire any relevant documents if it did not receive a response from Respondent by December 13, 2016. *Id.* at ¶ 6.

**5.**     Receiving no reply, VETS conducted an Internet search and obtained contact information for Respondent's Associate General Counsel,Christina Feege, whom VETS contacted by phone on December 14, 2016. *Id.* at ¶ 7.

6.     Ms. Feege responded later that day via e-mail offering to help, and VETS responded with an email the following day, attaching the October 27 and December 6 letters. *Id.* at ¶ 8.

7.     On December 28, 2016, VETS received an email from Mr. Bolden explaining that he had provided Ms. Feege with some data, that the data did not indicate any raises that Complainant had missed out on, and that he would continue to work with Ms. Feege on providing an "official" response. *Id.* at ¶ 10.

8.     On January 5, 2017, VETS mailed a letter to Mr. Bolden, with an email copy to Ms. Feege, informing him that VETS would offer Complainant his referral rights to the U.S. Attorney General if it did not receive the requested information by January 10, 2017. *Id.* at ¶ 11.

9.     The following day, Ms. Feege sent an email including some information on

3

Complainant's pay history and requesting more information about his claim. *Id.* at ¶ 12.

10.    Later that same day, VETS responded with the requested information. *Id.* at ¶ 13.

11.    Despite a subsequent email and telephone call to Ms. Feege inquiring as to Respondent's interest in participating in a case resolution conference at the L'Oreal Maybelline facility, VETS did not hear back. *Id.* at ¶¶ 14-15.

12.    VETS closed the case on January 17, 2017, and informed Complainant of his referral rights. *Id.* at ¶¶ 15-16.

13.    Complainant requested a referral of his case to the Attorney General's office on January 18, 2017, and VETS informed Mr. Bolden and Ms. Feege of this request the following day. *Id.* at ¶¶ 17-18.

14.    On February 21, 2017, VETS contacted Complainant to discuss having him withdraw his referral request so VETS could issue a subpoena to Respondent for the documents necessary to investigate his claim. *Id.* at ¶ 20.

15.    Complainant sent an email withdrawing the referral the following day. *Id.* at ¶ 21.

*Issuance of Subpoena*

16.    On April 6, 2017, VETS issued the subpoena to Respondent's registered agent, pursuant to its authority under 38 U.S.C. § 4326, asking that Mr. Bolden appear at the VETS office in Little Rock on April 27 and bring Complainant's payroll records and

personnel file as well as documents related to the alleged departmental restructuring, so

VETS could determine if Complainant had indeed been denied a pay increase to which he

was entitled. Declaration of VETS State Director Roy Schultz ("RS Decl."), Exhibit 2 at ¶

4 & Exhibit A.

17.     The subpoena was received via UPS and signed for on April 18, 2017. *Id.* at

¶ 5 & Exhibit B.

18.     On May 12, 2017, VETS emailed a copy of the subpoena to Ms. Feege,

pointing out that no response had been received, even though the deadline had passed. *Id.*

at ¶ 6.

19.     On May 18, 2017, Ms. Feege requested an extension until June 7, which

VETS granted. *Id.* at ¶ 7.

20.     After granting another extension until June 14 but still having received no

documents or communication, VETS emailed Ms. Feege on June 15, 2017, asking for an

explanation. *Id.* at ¶ 8.

21.     On July 6, 2017, Ms. Feege requested permission to email the documents,

explaining that she had collected all of them save Complainant's personnel file, which

had just been found and was being sent to her via overnight delivery. *Id.* at ¶ 9.

22.     On July 10, 2017, VETS responded that email would be acceptable and

inquired as to an expected delivery date. *Id.* at ¶ 10.

23.     Having received no documents or communication, VETS emailed Ms.

Feege on July 25, 2017, giving a deadline of July 31 before a subpoena enforcement action would be pursued. *Id.* at ¶ 11.

*Enforcement of Subpoena*

24.     Because no documents were ever received in response to the subpoena, VETS referred the case to the Office of Solicitor, United States Department of Labor for enforcement.  Declaration of Navin Jani ("NJ Decl."), Exhibit 3 at ¶ 5.

25.     On August 17, 2017, counsel for the Department of Labor emailed Ms. Feege a copy of the subpoena and asked to receive by August 25, 2017 either the documents or an explanation of the delay with a firm timeline for delivery. *Id.* at ¶ 6 & Exhibit A.

26.     Counsel for the Department of Labor of Solicitor left a voice mail message for Ms. Feege on August 18, 2017. *Id.* at ¶ 7. Having received no documents or communication, counsel for the Department of Labor sent both an email and a letter via UPS to Ms. Feege on August 28, 2017, repeating the previous requests and giving Respondent a new deadline of September 8, 2017. *Id.* at ¶ 8 & Exhibit B.

27.     The August 28 letter was received and signed for on August 29. *Id.* at ¶ 9 & Exhibit C.

28.     Having received no documents or communication, counsel for the Department of Labor re-sent the August 28 letter to Respondent's corporate headquarters via USPS Certified Mail. *Id.* at ¶ 10.

29.     The re-sent letter was received and signed for on September 15, 2017. *Id.* at ¶ 11 & Exhibit D.

30.     Counsel for the Department of Labor never received any reply to any of the communications described above. *Id.* at ¶ 12.

## III. DISCUSSION

The subpoena must be enforced because it was issued pursuant to an authorized investigation by VETS seeking reasonably relevant documents and testimony. A proceeding to enforce an administrative subpoena is summary in nature. *See E.E.O.C v. Karuk Tribe Housing*, 260 F.3d 1071, 1078 (9th Cir. 2001). This narrow scope is justified because of the important governmental interest in the expeditious investigation of possible unlawful activity. *See EEOC v. Children's Hosp.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (*en banc*) (holding that "the scope of the judicial inquiry in an EEOC or any other agency subpoena enforcement proceeding is quite narrow") (overruled on other grounds); *see also Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 217 (1946); *Sandsend Financial Consultants v. Federal Home Loan Bank Bd.*, 878 F.2d 875, 879 (5th Cir. 1989); *Federal Trade Comm'n v. Texaco, Inc.*, 555 F.2d 862, 872 (D.C. Cir. 1977). Indeed, "the very backbone of an administrative agency's effectiveness in carrying out the congressionally mandated duties of industry regulation is the *rapid exercise* of the power to investigate." *Federal Election Comm'n v. Machinists Non-Partisan Political League*,

655 F.2d 380, 385 (D.C. Cir. 1981) *quoting Fed. Maritime Commission v. Port of Seattle*, 521 F.2d 431, 433 (9th Cir. 1975) (emphasis added).

With all of the above in mind, the Eighth Circuit has held that a subpoena is properly enforced if (1) issued pursuant to lawful authority, (2) for a lawful purpose, (3) requesting information relevant to the lawful purpose, and (4) the information sought is not unreasonable. *Fresenius Med. Care v. United States*, 526 F.3d 372, 375 (8th Cir. 2008). The role of a court in a subpoena enforcement action is "sharply limited" to inquiring whether these requirements are met. *EEOC v. Kloster Cruise Ltd.*, 939 F.2d 920, 922 (11th Cir. 1991). Moreover, the Supreme Court has held that the Secretary can establish a *prima facie* case solely through a government official's declaration. *United States v. Stuart*, 489 U.S. 353, 360 (1989). Thus, an administrative subpoena must be enforced if the information sought is "not plainly incompetent or irrelevant to any lawful purpose of the agency." *Kloster*, 939 F.2d at 922 (quoting *EEOC v. Fremont Christian Sch.*, 34 Fair Empl. Prac. Cas. (BNA) 1036, 1038 (N.D. Cal. 1982)). To invalidate it, on the other hand, is to question the power of Congress to delegate enforcement of federal laws. *Oklahoma Press*, 327 U.S. at 201.

### The Court Should Enforce the Subpoena Because the Secretary Has Established His *Prima Facie* Case.

*1.     The First and Second Elements Are Met Because Congress Authorized the Secretary to Conduct Investigations and to Issue Administrative Subpoenas.*

VETS, an agency of the United States Department of Labor, issued the subpoena

in this case. Congress has granted broad authority to the Secretary under the Act to

investigate complaints to ensure employers are complying with the provisions of the Act.

Section 4322 of the Act provides authorizes the type of investigation at issue:

> (a) A person who claims that—
>
> (1) such person is entitled under this chapter to employment
> or reemployment rights or benefits with respect to
> employment by an employer; and
>
> (2)(A) such employer has failed or refused, or is about to fail
> or refuse, to comply with the provisions of this chapter…
>
> (C) may file a complaint with the Secretary in accordance
> with subsection (b), and the Secretary shall investigate such
> complaint

38 U.S.C. § 4322.

Furthermore, Section 4326 authorizes the issuance of subpoenas:

> (a) In carrying out any investigation under this chapter, the
> Secretary's duly authorized representatives shall, at all
> reasonable times, have reasonable access to and the right to
> interview persons with information relevant to the
> investigation and shall have reasonable access to, for purposes
> of examination, and the right to copy and receive, any
> documents of any person or employer that the Secretary
> considers relevant to the investigation.
>
> (b) In carrying out any investigation under this chapter, the
> Secretary may require by subpoena the attendance and
> testimony of witnesses and the production of documents
> relating to any matter under investigation. In case of
> disobedience of the subpoena or contumacy and on request of
> the Secretary, the Attorney General may apply to any district

> court of the United States in whose jurisdiction such
> disobedience or contumacy occurs for an order enforcing the
> subpoena.

38 U.S.C. § 4326. Thus, both the purpose for which the subpoenaed documents are being

sought and the subpoena itself are explicitly within VETS's statutory authority. That is to

say, VETS has statutory authority to investigate complaints made under the Act and to

issue administrative subpoenas in furtherance of these investigations, which is precisely

what is happening in this matter.  Section 4326(c) provides that the United States District

Courts shall have jurisdiction to issue writs commanding compliance with the subpoena

of the Secretary.

> 2. *The Third Element is Met Because the Information Sought in the*
> *Subpoena is Reasonably Relevant to VETS's Authorized*
> *Investigation.*

The Supreme Court has characterized the breadth of administrative subpoena

power as the power of original inquiry:

> The only power that is involved here is the power to get information from
> those who best can give it and who are most interested in not doing so.
> Because judicial power is reluctant if not unable to summon evidence until
> it is shown to be relevant to issues in litigation, it does not follow that an
> administrative agency charged with seeing that the laws are enforced may
> not have and exercise powers of original inquiry.  It has a power of
> inquisition, if one chooses to call it that, which is not derived from the
> judicial function.  It is more analogous to the Grand Jury, which does not
> depend on a case or controversy for power to get evidence but can
> investigate merely on suspicion that the law is being violated, or even just
> because it wants assurance that it is not.  When investigative and accusatory
> duties are delegated by statute to an administrative body, it, too, may take
> steps to inform itself as to whether there is probable violation of the law
> (emphasis added).

*United States v. Morton Salt,* 338 U.S. at 632, 642-43 (1950). Thus, a challenge to an administrative subpoena on relevance grounds must demonstrate that there is no reasonable possibility that the category of materials the government seeks will produce information relevant to the general subject of its investigation. *United States v. R. Enter., Inc.*, 498 U.S. 292, 301 (1992) (addressing grand-jury subpoenas). Put differently, the relevancy requirement is satisfied as long as the government shows that the material subpoenaed touches a matter under investigation. *N.L.R.B. v. Rohlen*, 385 F.2d 52, 57 (7th Cir. 1967); *see also Sandsend Financial Consultants v. Federal Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989); *E.E.O.C. v. Elrod,* 674 F.2d 601, 613 (7th Cir. 1982); *Motorola v. McLain*, 484 F.2d 1339, 1344-46 (7th Cir.), *cert. denied* 416 U.S. 936, 94 S.Ct. 1935 (1974).

As stated above, the investigation of Respondent is being conducted to determine whether Complainant was passed over for a pay increase he would have received if he had not been called to active duty. Accordingly, VETS's investigation must—at the very least—include obtaining documents that show Complainant's pay and position history, the pay and position history of employees performing his same job during the relevant period, and the details of any promotion or pay raise given to these workers during the relevant period. Hence all the documents sought are not only relevant, but germane and necessary to the matter being investigated.

3.     *The Fourth Element is Met Because the Information Sought is Reasonable.*

The subpoena narrowly defines the subject matter and time frame for the documents being requested from Respondent. The investigation concerns the treatment of a single employee, over a three-year period, vis-à-vis other employees in the same position, with regard to a specific pay increase allegedly awarded by Respondent during the 2007 calendar year. No extraneous information is sought, and production of the requested documents would not be burdensome for Respondent. Indeed, before becoming completely incommunicative, Ms. Feege, counsel for Respondent, claimed to have everything ready to send via email. *See* Declaration of VETS State Director Roy Schultz ("RS Decl.") at ¶ 9.

In this case, Respondents have failed to show why it cannot produce the requested documents. As such, the subpoenas are not indefinite, unreasonable, or overreaching, but rather, fall within the Secretary's enforcement powers and must be enforced. *See Powell*, 379 U.S. at 57-58; *Oklahoma Press Publishing*, 327 U.S. at 217; *Children's Hosp.*, 719 F.2d at 1428.

## III. CONCLUSION

The United States has satisfied all four of the elements necessary before an administrative subpoena can be enforced. The subpoena was issued under VETS's statutory authority in order to obtain a reasonable subset of documents that are directly related to a legitimate investigation under the Act. Moreover, Respondents have failed to

assert any reasonable justification for refusing to comply with the subpoena, and instead have become completely incommunicative. Accordingly, the Court in this case should issue an Order compelling the Respondent to produce the documents requested in the subpoena.

Respectfully submitted,

Cody Hiland
United States Attorney

By:     /s/ Stacey E. McCord
        Assistant U.S. Attorney
        AR Bar Number 87114
        P.O. Box 1229
        Little Rock, AR 72203
        (501) 340-2630
        Stacey.McCord@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2018, I filed the foregoing with the Clerk of the Court and mailed a copy to:

Christina Feege
Associate General Counsel
L'Oreal USA, Inc.
575 5th Ave.
New York, NY 10017-2422

L'Oreal USA, Inc.
c/o Corporation Service Company
80 State Street
Albany, New York 12207

/s/ Stacey E. McCord
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

UNITED STATES,                          §
                                        §
              Petitioner,               §
v.                                      §
                                        §        Civil Action No. _____
L'ORÉAL USA d/b/a/ L'ORÉAL MAYBELLINE    §
CO.                                     §
                                        §
              Respondent.               §
                                        §

## DECLARATION OF INVESTIGATOR JOHN F. DONOVAN

I, John F. Donovan, declare under penalty of perjury that the following is true and

correct:

1.       I am an employee of the Veterans' Employment and Training Service ("VETS"),

United States Department of Labor, where I work as an Investigator at the Little Rock, Arkansas

Office.  I am over 18 years of age and have personal knowledge of the facts and circumstances

stated herein.

2.       As part of my duties, I conduct investigations under the Uniformed Services

Employment and Reemployment Rights Act of 1994 ("USERRA" or "the Act"), which provides

various rights to military service members, including protection from discrimination based on

their military service or military status. These investigations are conducted on the basis of

complaints. After VETS concludes its investigation, complainants may seek a referral to the

United States Attorney General's office if they disagree with VETS's determination or if the

matter is not resolved with the employer.

3.       On October 24, 2106, Complainant Thomas R. Dashiell ("Complainant") filed a

complaint with VETS alleging that L'Oréal USA d/b/a/ L'Oréal Maybelline ("Respondent")

Page **1** of **4**



failed to award him a pay increase that other employees in the same position received during a
departmental restructuring because he was called to active duty with the Army National Guard in
November 2007. I was assigned to investigate Mr. Dashiell's complaint.

4.      I mailed a letter to Respondent on October 27, 2016, in which I explained
Complainant's claim and requested a position statement and supporting documentation in
response by November 10, 2016.

5.      I attempted several follow-up communications (via telephone on November 15
and 17 and via telephone and email on November 28), but did not receive any response until
November 29, 2016, when the Human Resources Director of Respondent's North Little Rock
facility, Jeff Bolden, informed me via e-mail that "internal counsel" would be providing a
response.

6.      I did not receive any further responses so, on December 6, 2016, I sent a letter to
Mr. Bolden informing him that VETS would use its subpoena power to acquire any relevant
documents if we did not receive a response from Respondent by December 13, 2016.

7.      I did not receive any reply to my letter, so a colleague conducted an Internet
search and obtained contact information for Respondent's Associate General Counsel, Christina
Feege, whom I contacted by phone on December 14, 2016.

8.      Ms. Feege responded later that day via e-mail offering to help, and I responded
with an email the following day, attaching the two letters I had already mailed to Respondent.

9.      On December 21, 2016, I attempted a follow-up contact with Ms. Feege via
telephone with no response.

10.     On December 28, 2016, I received an email from Mr. Bolden explaining that he
had provided Ms. Feege with some data that did not indicate "that any raises/promotions were

held back as a result of the deployment," but that he would continue to work with Ms. Feege on providing an "official response. "

11.     On January 5, 2017, I mailed a letter to Mr. Bolden, with an email copy to Ms. Feege, informing him that VETS would offer Complainant his referral rights to the U.S. Attorney General if we did not receive the requested information by January 10, 2017.

12.     The following day, Ms. Feege sent me an email in which she claimed that the payroll system did not indicate "any job change or promotion in or about November 2007," and in which she requested more information about "the nature of the promotion" that Complainant says he received.

13.     Later that same day, I e-mailed Ms. Feege back, explaining that Complainant was alleging he missed out on a position change from Line operator to Cake Press Operator and a concomitant pay increase, both of which occurred around the time of his deployment.

14.     On January 11, 2017, I both called and e-mailed Ms. Feege to see if Respondent was interested in participating in a case resolution conference at Respondent's North Little Rock facility—with Complainant, Mr. Bolden, and Mr. Bolden's staff all in attendance—to review Complainant's pay history and pension calculations.

15.     I did not hear back from Ms. Feege, so I called Complainant to inform him that I would be closing the case and giving him his referral rights.

16.     I closed the case on January 17, 2017, and mailed letters to this effect to Complainant and Respondent.

17.     Complainant e-mailed me on January 18, 2017, requesting a referral of his case to the Attorney General's office.

18.     I sent a letter to Mr. Bolden the following day informing him of the referral, and I

also attached a copy of the letter to an email I sent Ms. Feege.

19. A VETS supervisor subsequently reviewed the case and decided it would be in the best interests of Complainant to reopen it and issue a subpoena.

20. On February 21, 2017, I contacted Complainant to discuss having him withdraw his referral request so VETS could issue a subpoena .

21. Complainant sent me an email the following day withdrawing the referral.

22. To date, Respondents have not provided VETS with any of the documents I have requested throughout the investigation.

I declare under penalty of perjury that the foregoing is true and correct.

This 13th day of December, 2017.

John F. Donovan
Investigator, Veterans' Employment and Training Service
United States Department of Labor

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| UNITED STATES, | § | |
| | § | |
| Petitioner, | § | |
| v. | § | |
| | § | Civil Action No. _____ |
| L'ORÉAL USA d/b/a/ L'ORÉAL MAYBELLINE | § | |
| CO. | § | |
| | § | |
| Respondent. | § | |
| | § | |

## DECLARATION OF STATE DIRECTOR ROY SCHULTZ

I, Roy Schultz, declare under penalty of perjury that the following is true and correct:

1.      I am an employee of the Veterans' Employment and Training Service ("VETS"),
United States Department of Labor, where I work as the Director for the State of Arkansas. I am
over 18 years of age and have personal knowledge of the facts and circumstances stated herein.

2.      As part of my duties, I oversee investigations under the Uniformed Services
Employment and Reemployment Rights Act of 1994 ("USERRA" or "the Act"), which provides
various rights to military service members, including protection from discrimination based on
their military service or military status. These investigations are conducted on the basis of
complaints. After VETS concludes its investigation, complainants may seek a referral to the
United States Attorney General's office if they disagree with VETS's determination or if the
matter is not resolved with the employer.

3.      Between October 27, 2016 and January 17, 2017, a VETS investigator out of
Little Rock, John F. Donovan, communicated with several representatives of L'Oréal USA d/b/a/
L'Oréal Maybelline ("Respondent") via email, conventional mail, and telephone in an attempt to



Page 1 of 3

secure documents related to a complaint filed by Thomas R. Dashiell ("Complainant"). VETS

never received any documents from Respondent.

    4.      As a result, on April 6, 2017, VETS Regional Administrator Robert Creel issued a

subpoena *duces tecum* ("Subpoena") to Respondent's registered agent, pursuant to VETS's

authority under 38 U.S.C. § 4326, asking that the Human Resources Director of Respondent's

North Little Rock facility, Jeff Bolden, appear before me at the VETS office in Little Rock on

April 27, 2017. Mr. Bolden was instructed to bring Complainant's payroll records and personnel

file as well as documents related to the alleged departmental restructuring so VETS could

determine if Complainant had indeed been denied a promotion to which he was entitled. A true

and correct copy of the Subpoena is attached as Exhibit A.

    5.      The subpoena was received via UPS and signed for on April 18, 2017. A true and

correct copy of the receipt is attached as Exhibit B.

    6.      On May 12, 2017, I emailed a copy of the subpoena to Respondent's Associate

General Counsel, Christina Feege, pointing out that no response had been received, even though

the deadline had passed.

    7.      On May 18, 2017, Ms. Feege requested via email an extension until June 7, which

I granted the following day.

    8.      After granting another extension until June 14 but still having received no

documents or communication, I emailed Ms. Feege on June 15, 2017, asking for an explanation.

    9.      On July 6, 2017, Ms. Feege requested permission to email the documents to me,

explaining that she had collected all of them "but the HR file," which had just been found and

was being "overnighted" to her.

10.     On July 10, 2017, I responded that email would be acceptable and inquired as to an expected delivery date.

11.     Having received no documents or further communication, I emailed Ms. Feege on July 25, 2017, giving a deadline of July 31 before a subpoena enforcement action would be pursued.

12.     To date, Respondents have not provided VETS with any of the documents requested in the Subpoena.

I declare under penalty of perjury that the foregoing is true and correct.

This 13th day of December, 2017.

Roy Schultz
State Director, Veterans' Employment and Training Service
United States Department of Labor

# United States of America
## Department of Labor
## Veterans' Employment and Training Service
## SUBPOENA DUCES TECUM

TO:  <u>Mr. Jeff Bolden, Human Resources Director, L'Oréal-Maybelline USA</u>

*At the instance of the* Regional Administrator of the Dallas Region *of the* U.S. DEPARTMENT OF LABOR, *you are hereby required to appear before* Roy Shultz, Arkansas State Director, U.S. Department of Labor, Veterans' Employment and Training Service, U.S. Department of Labor, *at* 2 Capitol Mall, Room 237, Little Rock, AR 72203 *on the* 27th *day of* April, 2017 *at* 1:00 *o'clock* p.m. *of that day, In the Matter of* Tomas R. Dashiell v L'Oréal-Maybelline USA, USERRA Case Number AR-2017-00001-10-G. *And you are hereby required to bring with you and produce at said time and place the following books, papers, and documents:*

<u>     See Attachment A                                                        </u>

## FAIL NOT AT YOUR PERIL.



IN TESTIMONY WHEREOF, *the seal of the* U.S. DEPARTMENT OF LABOR *is affixed hereto, and the undersigned, the* REGIONAL ADMINISTRATOR of the Dallas Region *of the* VETERANS' EMPLOYMENT AND TRAINING SERVICE *of said* U.S. DEPARTMENT OF LABOR, *has hereunto set his hand at* 525 Griffin St., Room 858, Dallas, Texas 75202 *this*

*Sixth* *day of* *April* , 2017

Robert Creel, Regional Administrator

GOVERNMENT
EXHIBIT
A

PENGAD 800-831-6989

## ATTACHMENT A

## INSTRUCTIONS FOR RESPONDING

1. Documents responsive to each request shall be identified and produced by reference to the request number and/or subpart to which they are responsive. Copies may be produced in lieu of originals where certification is made that the copy is a true and accurate reproduction of the original. The custodian need not appear in person to testify under oath if all documents are accompanied by an affidavit or declaration certifying that a reasonably diligent search was completed and that all documents responsive to the subpoena have been provided, or, in the alternative, that there are no documents responsive to the requests.

2. Identify each document withheld from production on the grounds that the document contains materials for which a claim for privilege is asserted. The identification shall include the name, address, position, and organization of the author, each recipient of the document, the present custodian of the document, the date of the document, a brief description of the type of subject matter the document contains, and the request to which the document is responsive. The claim of privilege also shall include sufficient information to permit a Court to make a determination on the record as to whether the claim of privilege is valid.

3. If any document requested to be produced was, but is no longer in your possession or control or is no longer in existence, state whether it is: (a) missing or lost; (b) destroyed; (c) transferred voluntarily or involuntarily to others and, if so, to whom; and/or (d) otherwise disposed of. In each instance explain the circumstances surrounding the authorization for such disposition (including the name, title and address of the person who directed such disposition) and state the approximate date thereof.

4. Each request set forth herein refers to documents and property in custody, control, or possession of the L'Oréal-Maybelline USA, or their counsel, representatives, agents, servants, employees, investigators or consultants and their representatives, agents, servants, or employees.

## DEFINITIONS

1. The terms "you" and "your" shall refer to the L'Oréal-Maybelline USA, and their counsel, representatives, agents, servants, employees, investigators or consultants and their representatives, agents, servants, or employees.

2. The term "and/or" shall be constructed conjunctively and disjunctively so as to acquire the broadest answer to the particular request. Similarly, the terms "any," "each" and "every" are used in the inclusive sense, and therefore should be read as meaning "each and every."

3. The terms "relating to," "pertaining to" or "concerning" mean, without regard to grammatical variations of such terms: constituting, memorializing, evidencing, containing, showing, supporting, contradicting, summarizing, pertaining to, or referring to, whether directly or indirectly, to the subject of the particular request.

4. The term "document" shall mean any written, printed, typed, or other graphic matter of any kind or nature and all mechanical or electronic sound recordings or transcripts thereof, in the possession and/or control of the L'Oréal-Maybelline USA, and their counsel, representatives, agents, servants, employees, investigators or consultants and their representatives, agents, servants, or employees or known by the L'Oréal-Maybelline USA and their counsel, representatives, agents, servants, employees, investigators or consultants and their representatives, agents, servants, or employees to exist, and shall also mean all copies of documents by whatever means made, including, but not limited to, paper, letters, correspondence, telegrams, interoffice communications, memoranda, notes, notations, notebooks, reports, records, accounting books or records, schedules, tables, charts, transcripts, publications, scrapbooks, diaries, and any drafts, revisions, or amendments of the above.

5. The terms "writings" and "recordings" shall have the meaning ascribed to them in Federal Rule of Civil Evidence 1001, which consist of letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostatting, photographing, magnetic impulse, mechanical or electronic recording, computer, or other form of data compilation.

6. The term "photograph" shall have the meaning ascribed to it in Federal Rule of Civil Evidence 1001, which includes still photographs, X-ray films, video tapes, and motion pictures.

## REQUESTED DOCUMENTS

1. All payroll and pension records for Thomas R. Dashiell for the period of January 1, 2005, through December 31, 2008.

2. Thomas R. Dashiell's personnel file for the period of January 1, 2005, through December 31, 2008.

3. For the period of January 1, 2007 through December 31, 2007, please produce all documents related to any departmental restructuring for employees employed at L'Oréal-Maybelline USA's (L'Oreal) Arkansas location, including but not limited to, the effective date(s) of any departmental restructuring and, for each employee, including but not limited to, those documents that reflect:

   a. Job title before and new job title after restructuring

   b. Start date with L'Oreal

   c. Effective date of new position or job title and

   d. Amount of salary increase.

4. For the period of January 1, 2007, through December 31, 2007, please provide the documents that reflect how the departmental restructuring was communicated to employees and how the departmental restructuring was implemented for employees.

**Your package has been delivered.**

**Delivery Date:**   Tuesday, 04/18/2017
**Delivery Time:**   09:46 AM

At the request of DOL-OASVET-VETS-DALLAS/DENVER, this notice alerts you that the status of the shipment listed below has changed.

# Shipment Detail

| | |
|---|---|
| **Tracking Number:** | **1ZX67218A293563166** |
| **Ship To:** | Corporation Service Company<br>80 STATE ST<br>FLOOR 10<br>ALBANY, NY 12207<br>US |
| **UPS Service:** | UPS NEXT DAY AIR |
| **Number of Packages:** | 1 |
| **Weight:** | 0.1 LBS |
| **Delivery Location:** | INSIDE DELIVERY |
| **Signed by:** | VOHNAKA |
| **Signature Required:** | Adult must be at least 21 years of age |
| **Reference Number 1:** | From AR VETS |
| **Reference Number 2:** | Subpoena Duces Tecum ((L'Oreal) |



GOVERNMENT
EXHIBIT
B
_____
PENGAD 800-631-6989

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

UNITED STATES,                             §
                                           §
          Petitioner,                      §
                                           §
v.                                         §
                                           §          Civil Action No. _____
L'OREAL USA d/b/a/ L'OREAL MAYBELLINE      §
CO.                                        §
                                           §
          Respondent.                      §
                                           §
_____§

## DECLARATION OF NAVIN JANI

I, Navin Jani, declare under penalty of perjury that the following is true and correct:

1.      I am an employee of the Office of the Solicitor, United States Department of

Labor, where I work as a trial attorney in the Dallas Regional Office. I am over 18 years of age

and have personal knowledge of the facts and circumstances stated herein.

2.      As part of my duties, I provide legal advice and assistance to the Veterans'

Employment and Training Service ("VETS"). Among other things, VETS is statutorily tasked

with conducting investigations under the Uniformed Services Employment and Reemployment

Rights Act ("USERRA" or "the Act). USERRA places certain obligations on employers of

military service members, and prohibits discrimination based on military service or military

status.

3.      At issue in this matter is an investigation of L'Oreal USA d/b/a/ L'Oreal

Maybelline ("Respondent") under USERRA based on a complaint by a military service member

who had been employed by Respondent and allegedly was passed over for a pay increase that

other employees in the same position received during a departmental restructuring in November

2007 because he was simultaneously called to active duty with the Army National Guard.

GOVERNMENT
EXHIBIT
3

PENGAD 800-631-6989

4.      On April 6, 2017, VETS Regional Administrator Robert Creel issued a subpoena

*duces tecum* ("Subpoena") to Respondent's registered agent, pursuant to VETS's authority under

38 U.S.C. § 4326, asking that the Human Resources Director of Respondent's North Little Rock

facility, Jeff Bolden, appear before him at the VETS office in Little Rock on April 27, 2017, and

bring Complainant's payroll records and personnel file as well as documents related to the

alleged departmental restructuring, so VETS could determine if Complainant had indeed been

denied a promotion to which he was entitled.

5.      Because no documents were ever received in response to the Subpoena, VETS

referred the case to the Solicitor's Office for enforcement of the Subpoena on August 3, 2017.

6.      I wrote an email to Respondent's Associate General Counsel, Christina Feege, on

August 17, 2017, attaching the Subpoena and asking her to send me by August 25, 2017, either

the documents or an explanation and reasonable timeline for production. A true and correct copy

of the email is attached as Exhibit A.

7.      I left a voicemail message for Ms. Feege the following day.

8.      Receiving no reply whatsoever to either the email or telephone message, I then

mailed a letter to Ms. Feege, via UPS and email attachment, explaining the basics of the case and

giving Respondent until September 8, 2017, to send me the documents or an explanation and

reasonable timeline for production. A true and correct copy of the letter is attached as Exhibit B.

9.      The letter was received on August 29, 2017. A true and correct copy of the receipt

notification is attached as Exhibit C.

10.     Again receiving no communication in response, I mailed a copy of the letter via

USPS Certified Mail to Respondent's headquarters on September 11, 2017.

11.     This letter was received and signed for on September 15, 2017. A true and correct

copy of the signature is attached as Exhibit D.

12.     To date, Respondents have neither complied with the Subpoena nor provided an

explanation for this failure.

I declare under penalty of perjury that the foregoing is true and correct.

This 14ᵗʰ day of _December_, 2017.

_____
Navin Jani
Trial Attorney, Office of the Solicitor
United States Department of Labor

| | |
|---|---|
| **From:** | Jani, Navin S - SOL |
| **To:** | cfeege@us.loreal.com |
| **Subject:** | USERRA case re: Thomas Dashiell |
| **Date:** | Thursday, August 17, 2017 9:40:00 AM |
| **Attachments:** | Subpoena Duces Tecum - Dashiel v L"Oreal.pdf |

Ms. Feege,

This file has recently been referred to me for the filing of a subpoena enforcement action in US District Court concerning the attached subpoena. Based on my review of the file, I don't expect that will be necessary, as I see you e-mailed the State Director, Roy Schultz, on July 6 saying that the documents were ready to be sent via e-mail. If this is the case, I would ask that you please send the documents to me by next **Friday, August 25**. If that is infeasible for some reason, please let me know the reason for the expected delay and propose a reasonable time frame for production.

I am available to discuss over the phone at your convenience. Thanks in advance for your prompt attention to this matter.

Sincerely,

*Navin Jani*
Trial Attorney
U.S. Department of Labor
Office of the Solicitor
525 S. Griffin Street, Suite 501
Dallas, Texas 75202
Tel: 972.850.3110
Fax: 972.850.3101

*This message may contain information that is privileged and exempt from disclosure under applicable law. Do not share or copy without consulting the Office of the Solicitor. If you think you received this e-mail in error, please notify the sender immediately.*


GOVERNMENT
EXHIBIT
A
PENGAD 800-631-6989

**U. S. DEPARTMENT OF LABOR**

OFFICE OF THE SOLICITOR
525 S. Griffin Street, Suite 501
Dallas, Texas 75202
(972) 850-3138
(972) 850-3101 Fax

Reply to the Attention of: NJani



**Via Electronic Mail and UPS Overnight**

August 28, 2017

Christina Feege
Associate General Counsel
L'Oreal USA, Inc.
575 5th Ave.
New York, NY 10017-2422

*Re:*    Investigation of USERRA claim by Thomas Dashiell

Dear Ms. Feege:

I am writing to you as a follow-up to my email of August 17 and phone message of August 18 concerning the enclosed subpoena. The subpoena was issued to Jeff Bolden, Human Resources Director in your company's North Little Rock office, in connection with a claim by Thomas Dashiell under the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §4301 *et seq.* Although the requested documents were due to be produced on April 27, 2017, you requested (and were granted) an extension until June 7, 2017, by Roy Schultz, State Director for the Veterans' Employment and Training Service. As no documents have been produced to date, however, the matter has been referred to my office.

Please either send me the requested documents (via electronic or regular mail) or provide me a written explanation of the reason for the delay as well as a reasonable proposed timeline for production (again, by either electronic or regular mail) no later than **Friday, September 8, 2017.** If I do not hear back from you by that date or if the documents are not produced within a reasonable time thereafter, I will work with the local United States Attorney's Office to file a subpoena enforcement action in the United States District Court for the Eastern District of Arkansas.

I look forward to receiving the responsive documents from you.  In the meantime, please call me at my direct dial number, (972) 850-3110, if you have any questions.

Sincerely,

*Navin Jani*

Navin Jani
Trial Attorney

GOVERNMENT
EXHIBIT
**3**

PENGAD 800-631-6989

10/16/2017                                                    Tracking: UPS

 **Proof of Delivery**

                                        Close Window

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

| | |
|---|---|
| **Tracking Number:** | 1ZW984240195288149 |
| **Service:** | UPS Next Day Air® |
| **Weight:** | 1.00 lb |
| **Shipped/Billed On:** | 08/28/2017 |
| **Delivered On:** | 08/29/2017 10:17 A.M. |
| **Delivered To:** | NEW YORK, NY, US |
| **Received By:** | FD |
| **Left At:** | Front Desk |

Thank you for giving us this opportunity to serve you.

Sincerely,

UPS

Tracking results provided by UPS:  10/16/2017 3:32 P.M.  ET





**UNITED STATES**
**POSTAL SERVICE.**

Date: October 16, 2017

Navin Jani:

The following is in response to your October 16, 2017 request for delivery information on your Certified Mail™ item number 9489009000276033026006.  The delivery record shows that this item was delivered on September 15, 2017 at 1:24 pm in NEW YORK, NY  10017. The scanned image of the recipient information is provided below.

Signature of Recipient :   

Address of Recipient :   

Thank you for selecting the Postal Service for your mailing needs.

If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,
United States Postal Service



GOVERNMENT
EXHIBIT
D